We will hear the final case on our calendar today, which is Ricardo Quintanilla-Mejia v. Attorney General, that's number 18-67. Yes, Your Honor. Thank you. May it please the Court, I am Bob Graziano. I represent Petitioner Ricardo Quintanilla-Mejia, and I have reserved three minutes for rebuttal. Your Honor, this case is about a pro se petitioner who we submit testified credibly before the I.J. in this case. And I also submit, Your Honor, that the I.J. himself granted this case when he said that he could not find an anti-religious motivation because instead, as the judge reasons, quote, the gang was apparently objecting to the respondent's activities of trying to rehabilitate youth. That's on page 15 of the decision, I think 37 of the transcript. But we think, Your Honor, that when he was making that pronouncement, he failed to notice that the respondent, the petitioner was doing those activities because of his religious beliefs, and it was part of his religious activity. He was trying to prevent young people from losing their lives to the gangs in El Salvador, and he did those actions because of his beliefs. We also believe, Your Honor, that the matter should be remanded for additional analysis of two particular social groups, one of which the judge himself reviewed, and that was basically the potential social group of former gang members who have distanced themselves from the gang. And in the judge's decision, he again stated the enforce their code of conduct and punish infidelity to the gang, unquote. And again, Your Honor, we believe that that is a basic statement of retaliation because of his membership or former membership in the gang, that he was an infidel to the gang, and that is why the gangs have been persecuting the petitioner. Now, of course, Your Honor, this circuit has not ruled yet on whether or not former gang members can be a particular social group. However, the court, in its recent decision from January, Ordoñez... I'm sorry, July 2020, Ordoñez-Azmin, 965F3-128, did, of course, leave open the possibility that such a membership, former gang membership, can be a particular social group. Although the issue really wasn't completely reached in that decision, it still left open the possibility. We would submit, Your Honor, that it would be in keeping with Second Circuit precedent in the case of Kudrya Chova versus Gonzalez, and other case law where former KGB agents could be considered a particular social group. The second formulation that we would want the court to consider are individuals working in El Salvador to rehabilitate or prevent youth from getting involved in gangs. Now, we've mentioned that as the basis for the petitioner's claim for religious persecution, but it is also, we think, a socially visible group and a particular group. Individuals who are working in El Salvador to rehabilitate youth, we clearly know who is in it and who is not in it. The government may argue that not everyone knows that he was working in El Salvador to rehabilitate youth or to save youth from the gangs, but that is not the key issue. The issue is whether or not the society as a whole considers these folks as a separate group, and whether or not the perpetrators of the persecution would consider them as a separate group. And clearly, the latter, they certainly would. The situation in this case, Your Honor, is that the society of El Salvador certainly is aware of people who are trying to prevent young people from joining the scourge of their country, which is gangs, just as they know there are groups of people out there in El Salvador. Let me make an analogy to the 1830s in this country. If a person was distributing literature of an abolitionist newspaper in Philadelphia, their neighbors may not know that one of their neighbors was doing that and was an abolitionist, but clearly the society in question knew that there were people who were trying to bring an end to slavery. And if the pro-slavery folks saw him distributing copies of the Liberator or another abolitionist paper, and they tarred and feathered the individual, that would be persecution on the basis of that person's membership in the group of abolitionists. Likewise, it is clear that if somebody is trying to keep people out of the gangs and actively working against the gangs, the gangs are going to consider that person to be someone fighting against their interests. Excuse me, you have a minute left. Thank you. On the claim under the Convention Against Torture, Your Honors, I simply wanted to state that the decision from the board is a bit confusing because they say that Mr. Quintanilla's is a bit confusing, but yet we are still left with the fact that the board never determined whether or not he testified credibly, so if we acknowledge that their decision without getting to an adverse credibility finding means that he did testify credibly, it would appear that that matter should be remanded for further analysis as well, because clearly he did state that members of the government had attacked him and had at least detained him and done other things, and also talked about the corruption that is rampant throughout El Salvador. Thank you very much. Thank you. Does Roger, do you have any questions for counsel? Yes, I do. Can you point us to what evidence in the record there is? I understand you urge it as a conclusion, but what evidence would compel a conclusion that this social group of people opposing youths joining gangs is a cognizable social group in El Salvador? Your Honor, the testimony of the respondent addressed that because he joined groups that did this. I mean, there were groups of people who were actively acting in this way. The standard is that it is a cognizable social group within the country, and I'm not sure I saw that. I mean, it seemed to me that your client, who I recognize was pro se for part of his proceedings before the agency, was advancing a religious claim. It then morphed into a social group claim, but it wasn't clear to me where there was any evidence that it was specifically the social group, not simply that it was former gang members, but people opposing individuals joining gangs, and I wasn't sure I saw either where he claimed that to the agency or where he tried to demonstrate that that was a cognizable group. Your Honor, I would agree with the court's conclusion that at the time of the hearing when he was pro se, that had not crystallized. That's before the IJ, yeah. And we would argue, Your Honor, that although Prabudio does allow for the BIA to look at issues that were not raised before the IJ, we would argue that Prabudio does allow this whether or not the BIA's decision in that regard was an error, and given that this individual was pro se, we would argue that it was an error for the BIA not to consider those groups as particular social groups, and it is clear... Go ahead. I'm sorry, Your Honor. It's also clear from the record that the judge himself did look at former gang members and specifically rejected that under a matter of WGR, and we submit that WGR has not been held to, at least in the courts of the Second Circuit. You see, even if we were to agree with you that the IJ considered former gang members trying to discourage membership in gangs, where was it ever presented to either the group was cognizable in El Salvador? That's what I'm missing. Your Honor, I'd have to review the record again, but I do believe that even the judge held that it looked like they were acting in that capacity because of his former gang membership. That was the motivation, but that doesn't say that that's a cognizable group. Am I missing something here? I understand what you're saying, that he recognized that and not religion as the motivation, but I still am trying to see what would have made them think that was a cognizable social group. Your Honor, I would, again, I don't know exactly what there is formally in the record on that. However, in the law of this circuit, it seems to me clear that a particular social group can be comprised of individuals who possess some fundamental characteristics in common, which serves to distinguish them in the eyes of a persecutor or in the eyes of a victim. Now, that is a quote from Gomez versus INS, which is a 1991 decision, but it was cited. And that quote that I just read out was part of the decision in a reported case of Hernandez-Chapone-Bibar back in January of 2020. And so if we look at whether or not the gang would think of him or think of that group as something that they would recognize, if their actions are against him because he's not showing fidelity to the gang, then clearly, in the eyes of the persecutor, former gang members can be cognizable. Thank you, Judge Cabranes. Thank you, Judge Sullivan. I have no questions. Thank you. I have no questions. Thank you very much. Well. Excuse me one second. The Petitioners' Council is in Buffalo, New York, is that right? Yes, Your Honor. Good. Did you reserve some time? Yes, Your Honor. I did reserve a few minutes. OK. So let's turn to the government or the BIA or whatever it is that the Office of Immigration Litigation may be. Is that Mr. Schultz? Yes, Your Honor. Thank you. Can you all hear me? Yes, we can. Thank you. Thank you, Your Honors. May it please the Court. My name is Evan Schultz. I represent the Attorney General in this matter. Let me just take a step back, maybe, and try to impose a little bit of order onto what the discussion here is. There are essentially three issues that Petitioner raised in the case here in his appeal today. And I think each one can be dealt with very quickly. The first one came up just in the questioning is the alleged religious persecution. But Petitioner waived that argument. There's no substantial discussion about that in his opening brief, but there's not even any substantial discussion about it in the reply brief. So that's really off the table at this point. The second issue is the alleged persecution based on a particular social group. So this court and the board have already dealt with the particular social group at issue here in the WGR case, the board, and then later in the Maldonado case in an unpublished decision, but still a decision in this court. Both came to the conclusion that former gang membership in El Salvador does not make for a particular social group. Just as a quick addition there, opposing counsel mentioned that this court has not adopted WGR. That's simply not true. This court does follow WGR in the Poloco decision, along with its twin case, MUBG. The third issue here is the torture convention. And for the torture convention, even taking Petitioner's testimony as credible, he makes two key concessions. The first is that he never told the police about what the gangs had done to him, what the gang had done to him. And the second is that he admitted that the last run in that he had with the police was years before he left El Salvador. There's no confusion about those points. That's very clearly in his testimony. In other words, given that and given the standard of review for the Convention Against Torture, the record does not compel a conclusion that the agency's decision here was wrong. Now, going back to one point here, going to the particular social group issue, as mentioned, the Petitioner here was pro se. And the immigration judge did his duty. He understood that Petitioner here was pro se, and he went above and beyond what the Petitioner had discussed in the application for asylum. The application for asylum mentioned religion. The immigration judge listened closely and then decided that there was a good case that the Petitioner had maybe put together, potentially, about whether former gang members were particular social groups. The judge went ahead, the immigration judge went ahead and addressed that as well. That's on page 47 of the record and a little bit more, I think, on page 55. That's the gist of what Petitioner talked about. These other areas that opposing counsel has raised is part of a shifting mass of particular social groups that we talk about in our brief. Some of them have been waived. Some of them were not necessarily raised fully before the board. Some of them weren't raised fully in the brief to this court. But let me cut to the quick of it. As Judge Fragi said, the key question when it comes to particular social groups, even if all these had been raised, is whether or not the Petitioner has met his burden to present evidence to show that society views that group as cognizable. That's from the WGR decision from the board that this court, again, has followed in Paloco. There's simply none of that here. If you look either at the Petitioner's testimony, but more to the point, if you look at Petitioner's briefs to this court, it does not put together the sort of evidence that one needs to see to show, even under the de novo standard review that applies to cognizability, whether or not there was this particular social group here that was cognizable. Your Honor, I'm happy to entertain any other questions you have, but from our perspective, I think that's the long and short of it. I'm Jessica Browning. Yes. Yes. I'm sorry. Thank you, Your Honors. Hello. Yes, Your Honor, this is Evan Schultz. Can you all hear me? Yes, yes. I can hear you. Yes, I can hear you. Judge Sullivan? Judge Razi? Yes. Yes. I have no question. I have a question. Your adversary suggests that it is sufficient to carry the burden on a social group to show that the oppressive group recognizes the social group. The society at large is an alternative possible showing. Do you want to comment on whether you think that is, in fact, correct? I have a couple of responses to that, Your Honor. The first is that's not something that was raised clearly in the brief to this court. So to the extent that that's a new argument, I would just like to flag that potentially waived and something that was really put squarely forward for research and briefing. That said, given Your Honor's question, my recollection is that the NUVG case addresses this and it says that the it says that persecutors that it says that the social group cannot be defined solely by the persecutors and there's close law, except in this circuit or not, that follows that. I also think there might be some challenges to that. But again, this is not something that was presented squarely in the brief. So so so I'm a little bit and I feel going too far out from what we were actually researched. OK, thank you. Thank you, Judge Cabranes. Thank you, Judge Sullivan. I have no questions. Thank you. Thank you. Is Mr. Graziano still with us? Yes, Your Honor. You wanted to reply? Yes, Your Honor. I did. Although it was unclear whether the formulation under Gomez was still a valid law, which is the issue of whether or not the perpetrator's analysis or review or estimation that a cited with approval in the Hernandez-Jacone case. And I also want to say that the the reply brief did specifically talk a great deal about the religious persecution claim. And it was also mentioned in the initial brief and that we did not waive that. And in the reply brief, we made the basic argument that if his actions were taken in helping these youth escape the gangs as part of his religious activities and that's why they went after him, that makes the claim religious persecution. And again, I would reply to the court that the the board analysis of the claim under Catt does not it puts into doubt whether or not they believe the respondent's testimony. So the fact that the government counsel here is saying we don't have to worry about that. Well, that's not clear from a review of the board's decision. They put his testimony in doubt and without a formal finding of adverse credibility, I don't think they can do that. Thank you, Your Honor. Thank you very much, Mr. Graziano. And also, Mr. Schultz, we appreciate your arguments and we will reserve decisions and we are adjourned. Thank you, Your Honor. Court sends adjourn.